FILED
CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

2017 NOV 17 PM 1:33

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

| | |
|---|---|
| MARCO M. ELSER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PLANET PAYMENT, INC., CARL J. WILLIAMS, SHANE H. KIM, CAMERON R. M. McCOLL, and JONATHAN KAIDEN,<br><br>Defendants. | Case No.:<br><br>COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934<br><br>JURY TRIAL DEMANDED<br><br>CV 17-6736<br><br>HURLEY, J. |

Plaintiff, Marco M. Elser ("Plaintiff"), by and through his attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on October 26, 2017 (the "Proposed Transaction" or "Merger"), pursuant to which Planet Payment, Inc. ("Planet Payment" or the "Company") will be acquired by Franklin UK Bidco Limited ("Parent"), the parent company of Fintrax Group, through Parent's wholly owned subsidiary, Fintrax US Acquisition Subsidiary, Inc. ("Merger Sub") (Parent, Fintrax Group, and Merger Sub are collectively referred to herein as "Fintrax").

2. On October 26, 2017, Planet Payment's Board of Directors (the "Board" or the "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Fintrax. Pursuant to the terms of the Merger Agreement, Fintrax commenced a tender offer (the "Tender Offer") to purchase all of the outstanding shares of Planet

Payment common stock for $4.50 per share in cash (the "Offer Price").[1] The Tender Offer commenced on November 13, 2017, and is set to expire at 5:00 p.m., New York City time, on December 18, 2017.

3. The success of the Tender Offer is conditioned on Fintrax receiving the tender of a majority of Planet Payment's outstanding shares of common stock and Series A Preferred Stock (for purposes of this discussion, referred to collectively as "stock"), over 28% of which are already locked up pursuant to tender and support agreements executed between Fintrax and each of Planet Payment's directors and executive officers (who collectively beneficially own approximately 6.9% of the Company's stock), as well as certain significant stockholders of the Company, including Camden Partners Holdings, LLC (which beneficially owns approximately 12.1% of the Company's stock) and Andwel Partners (which beneficially owns approximately 8.8% of the Company's stock).

4. On November 13, 2017, Defendants filed a Solicitation/Recommendation Statement on Form 14D-9 (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction. As described herein, the Solicitation Statement omits material information with respect to the Proposed Transaction, which renders it false and misleading, in violation of Sections 14(d), 14(e), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d), 78n(e), 78t(a), and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9(d) ("Rule 14d-9).

5. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover

---

[1] Fintrax also seeks to acquire Planet Payment's Series A Preferred Stock for $13.725 per share in cash (the "Preferred Stock Offer Price").

damages.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(d), 14(e), and 20(a) of the Exchange Act.

7. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, and maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391 because Planet Payment maintains its principal executive offices in this District, each Defendant transacted business in this District, and a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

9. Plaintiff is, and has been continuously through all times relevant hereto, the owner of Planet Payment common stock.

10. Defendant Planet Payment is a Delaware corporation with its principal executive offices located at 670 Long Beach Boulevard, Long Beach, New York. Planet Payment's common stock is listed and traded on The NASDAQ Stock Market under the symbol "PLPM."

11. Defendant Carl J. Williams ("Williams") is the Company's President, Chief Executive Officer ("CEO"), Chairman of the Board, and has served as a director of Planet Payment since 2013.

12. Defendant Shane H. Kim ("Kim") has served as a director of Planet Payment since

2011.

13. Defendant Cameron R. M. McColl ("McColl") has served as a director of Planet Payment since 2006, and previously served as a director and Chairman of the Board from 1999 to 2000.

14. Defendant Jonathan Kaiden ("Kaiden") has served as a director of Planet Payment since 2006.

15. Defendants Williams, Kim, McColl, and Kaiden are collectively referred to as the "Individual Defendants."

16. Non-party Fintrax Group is a provider of multi-currency digital payment processing for tourists, international shoppers, merchants, partner banks and acquirers. Fintrax Group is headquartered in Galway, Ireland.

17. Non-party Merger Sub is a Delaware corporation and a wholly owned subsidiary of Parent. Merger Sub was formed for the purpose of entering into, engaging in, and/or effecting the Merger Agreement, the Tender Offer and the Merger.

**SUBSTANTIVE ALLEGATIONS**

18. Planet Payment is a provider of international payment processing and multi-currency processing services to merchants and their customers located in 23 countries and territories across the Asia Pacific region, North America, the Middle East, Africa and Europe.

19. Although the Solicitation Statement provides Planet Payment's stockholders with an overview of the Proposed Transaction, it omits certain critical information, which renders portions of the Solicitation Statement materially incomplete and/or misleading, in violation of the Securities Act provisions discussed herein. As a result, Planet Payment's stockholders lack material information necessary to allow them to make an informed decision concerning whether

to tender their shares.

20. In particular, the Solicitation Statement contains materially incomplete and/or misleading information concerning, *inter alia*: the financial analyses performed by Planet Payment's financial advisor, FT Partners (defined in the Solicitation Statement as the combination of FTP Financial Technology Partners LP and FTP Securities LLC, and referred to herein as "FTP"), in support of its fairness opinion, including certain of the projections upon which FTP relied. The financial advisor's opinion of financial fairness for a proposed transaction is one of the most important process-based underpinnings of a board's recommendation of a transaction to its stockholders. Thus, it is imperative for stockholders to be able to understand what factors might influence the financial advisor's analytical efforts.

21. For example, the Solicitation Statement provides that in rendering its fairness opinion, FTP performed a "Discounted Cash Flow Analysis" ("DCF") (page 24) using Planet Payment management's financial projections of the Company's unlevered free cash flows for the period from December 31, 2017, through December 31, 2022 (page 27). Although the Solicitation Statement provides total annual projected unlevered free cash flows, it fails to disclose the value of the constituent financial inputs used to calculate the starting line item for deriving all unlevered free cash flows: "Adjusted EBITDA."

22. Specifically, in calculating the unlevered free cash flows, the projections begin with the line item of "Adjusted EBITDA" and then subtract various financial metrics, such as stock based compensation and changes in working capital. "Adjusted EBITDA" is further defined (page 27) as "GAAP net income (loss) adjusted to exclude (1) interest expense, (2) interest income, (3) provision for income taxes, (4) depreciation and amortization, (5) stock-based compensation expense and (6) certain other items management believes affect the comparability of operating

results." However, the Solicitation Statement does not disclose the values of (1)-(4), nor does it disclose the identities of the "certain other items" referenced in (6).

23. The Solicitation Statement also fails to disclose, with respect to FTP's DCF: (i) certain of the inputs and assumptions underlying FTP's calculation of the discount rate range of 10.0%-14.0%, including the beta and risk free rate; (ii) the terminal value FTP used in its DCF; and (iii) the value of the net operating losses ("NOLs") that FTP used to calculate unlevered free cash flow.

24. The foregoing information is material to Planet Payment shareholders in deciding whether to tender their shares, as the lack of disclosure of the individual line items and inputs that were used by FTP in its financial analyses (and in management's projections) prevents shareholders from understanding the context of the figures or considering whether any of the inputs thereto or ranges derived therefrom are anomalous.

25. In addition, the Solicitation Statement is materially incomplete in that it fails to disclose, *inter alia*: (i) the transaction multiples FTP observed for each transaction included in its "Selected Precedent Transactions Analysis" (pages 24-25); and (ii) the list of merger and acquisition transactions FTP evaluated, and the premiums paid that FTP observed for each such transaction, in its analysis of acquisition premiums paid (page 25, second bullet point).[2]

26. This information would be material to Planet Payment shareholders in deciding whether to tender their shares, as the real informative value of the financial advisor's work is not

---

[2] According to the Solicitation Statement, this analysis was "not considered part of [FTP's] financial analysis with respect to its opinion but [was] noted for informational purposes." Solicitation Statement at page 25. However, the Solicitation Statement does not disclose why this analysis (as well as an analysis of historical closing prices for Planet Payment's common stock) was not part of FTP's fairness opinion, or why, given this fact, it was discussed in the Solicitation Statement.

in its conclusion, but in the valuation analyses that buttresses that result. When a financial advisor's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion, as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

27. According to the "Background of the Offer and the Merger" section of the Solicitation Statement (page 11), sometime prior to October 2016, the Special Committee of the Board determined that the Company should start to reach out to possible financial and strategic acquirors and "the Special Committee directed the representatives of FTP to begin such outreach." According to the Solicitation Statement (page 11), "[i]n October 2016, FTP began the process" of reaching out to possible acquirors. However, the Special Committee, which supposedly began the outreach process on or before October 2016, was, according to the Solicitation Statement, not created by the Board until *December 8, 2016*. In other words, either the Special Committee apparently acted to direct the Merger negotiation and sales process *months before* it was formed or empowered to do so by the Board, or the Solicitation Statement's chronology is incorrect.[3] Based on the timeline provided by the Solicitation Statement—conflicting portions of which cannot both be true—it is impossible for Planet Payment shareholders to determine whether the Special Committee acted properly and within its authority at the start of, and during, the sales process.

28. The Solicitation Statement also fails to disclose material information regarding potential conflicts of interest involving Planet Payment's Board and management, including whether Fintrax or the Company discussed, negotiated the terms of, or reached any

---

[3] Indeed, the Board purportedly decided to create the Special Committee "as a result of" receiving an initial indication of interest from a potential acquiror that FTP reached out to months earlier, on the direction of the supposedly not-yet-formed Special Committee.

agreements concerning the following listed items with Planet Payment's executive officers, directors, or management prior to the execution of the Merger Agreement: (1) potential future employment or other employment retention agreements or payments (although the Solicitation Statement says that "none of the Company's current directors or executive officers have entered into any agreements or arrangements with Fintrax" concerning the foregoing (page 20), it does not rule it out and does not state that no discussions had taken place or that promises had been made); (2) the specific retention bonus agreements that the Company "intends to enter into . . . with each executive officer, subject to approval of Fintrax" that are payable 12 months following the effective time of the Merger "in consideration for the executive officer agreeing to remain employed with the Company through the first anniversary of the [e]ffective [t]ime" (pages 6-7); and (3) the transaction cash bonuses of $333,333 payable to each executive officer at the closing of the Merger if they remain employed with the Company at that time (page 7).

29. Communications regarding post-transaction employment and Merger related benefits during the negotiation of the underlying transaction must be disclosed to stockholders that are trying to understand the motivations that could potentially influence or prevent fiduciaries from acting solely in the best interests of the Company.

30. The Solicitation Statement provides that the Company entered into at least four "confidentiality agreement[s]" with potential acquisition partners (including Fintrax, Party A, Party B, and Party C) that included "customary non-disclosure and standstill provisions that allowed [such potential acquisition partners] to make confidential proposals to the Company at any time." Solicitation Statement at pages 11, 14. However, the Solicitation Statement fails to explain what "customary . . . provisions" means, or to disclose whether or not such "customary" provisions included "don't-ask-don't-waive" requirements and/or sunset periods, or whether the

counterparties could seek a waiver of such standstills to make an unsolicited offer to acquire the Company.

31. According to the Solicitation Statement, on April 14, 2017, Party A submitted an offer to purchase each outstanding share of Planet Payment common stock for $5.10 per share. This was the highest offer Planet Payment received during the sales process, including from Party A (whose highest prior offer was $5.00 per share) and Fintrax (whose highest prior offer was $4.75 per share, and it had since fallen to $4.50 per share). On May 9, 2017, after reviewing the Company's updated internal forecasted financial results for 2017, Party A informed the Company that it "would no longer support the $5.10 per share proposed price." Solicitation Statement at page 13. In response, later that day, "the Company contacted Party A to respond that as a result, there was no intention to engage in further discussions regarding a strategic transaction." *Id.*

32. Although the Solicitation Statement states that Party A expressed no interest in making a new offer to acquire Planet Payment *several months later*—when the Company reached out to Party A during its renewed sales process—the Solicitation Statement does not disclose whether Planet Payment or its representatives attempted to negotiate with Party A for a revised offer at the time Party A rescinded its $5.10 per share offer, especially considering that Party A had been willing to offer prices below $5.10 per share that were still well above the Offer Price. This would be material to Planet Payment shareholders in considering whether the Offer Price represents fair value for their shares.

## CLASS ACTION ALLEGATIONS

33. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of Planet Payment (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or

affiliated with any of the Defendants.

34. This action is properly maintainable as a class action for the following reasons:

35. The Class is so numerous that joinder of all members is impracticable. As of November 3, 2017, there were 50,013,595 shares of Planet Payment common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

36. Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(d), 14(e), and 20(a) of the Exchange Act in connection with the Proposed Transaction; and (ii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Solicitation Statement as currently composed.

37. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

38. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

39. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

40. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy;

41. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## CAUSES OF ACTION

### COUNT I

**Claim for Violation of Section 14(d) of the Exchange Act and Rule 14d-9 Promulgated Thereunder (Against All Defendants)**

42. Plaintiff realleges each of the allegations Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting shareholder support of the Proposed Transaction.

44. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) provides, in pertinent part: "Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

45. SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the Exchange Act, provides, in pertinent part: "Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof."

46. In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's directors to: "Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

47. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

48. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing the statements in the Solicitation Statement to be materially incomplete and/or misleading.

49. The omissions and incomplete and misleading statements in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares. In addition, a reasonable investor would view such information as altering the "total mix" of information made available to shareholders.

50. As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(d) of the Exchange Act and SEC Rule 14d-9, absent injunctive relief from the Court, Plaintiff and the other members of the Class have sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision as to whether to tender their shares. Plaintiff and the Class have no adequate remedy at law.

**COUNT II**
**Claim for Violation of Section 14(e) of the Exchange Act**
**(Against All Defendants)**

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. Section 14(e) of the Exchange Act provides, in pertinent part: "It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation

of security holders in opposition to or in favor of any such offer, request, or invitation."

53. Defendants prepared, reviewed, filed and disseminated the false and misleading Solicitation Statement to Planet Payment's shareholders.

54. In doing so, Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

55. The omissions and incomplete and misleading statements in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares. In addition, a reasonable investor would view such information as altering the "total mix" of information made available to shareholders.

56. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were undoubtedly aware of this information and had previously reviewed it, including participating in the Merger negotiation and sales process and reviewing FTP's complete financial analyses purportedly summarized in the Solicitation Statement.

57. Defendants also knew that Plaintiff and the other members of the Class would rely upon the Solicitation Statement in determining whether to tender their shares.

58. As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff and the other members of the Class have sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision as to whether to tender their shares. Plaintiff and the Class have no adequate remedy at law.

**COUNT III**

**Claim for Violation of Section 20(a) of the Exchange Act**
**(Against the Individual Defendants)**

59. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60. The Individual Defendants acted as controlling persons of Planet Payment within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Planet Payment, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

61. Each of the Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Solicitation Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Solicitation Statement.

63. By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

64. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(d) and 14(e) of the Exchange Act, and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

65. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed. Plaintiff and the Class have no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Tender Offer and/or Proposed Transaction;

C. In the event Defendants consummate the Proposed Transaction, directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: November 17, 2017

Respectfully submitted,

**WOLF POPPER LLP**

By: [signature]
Carl L. Stine (cs-3000)
Robert S. Plosky
845 Third Avenue
New York, New York 10022
Tel: 212-759-4600
Fax: 212-486-2093
Email: cstine@wolfpopper.com
rplosky@wolfpopper.com

*Attorneys for Plaintiff*

## PLAINTIFF'S CERTIFICATION UNDER THE FEDERAL SECURITIES LAWS

I, Marco M. Elser, hereby state:

1. I have reviewed the complaint against Planet Payment, Inc. ("Planet Payment") and certain of its directors and officers. I have authorized the filing of a complaint and lead plaintiff motion on my behalf.

2. I am willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

3. I currently own ____________ Planet Payment shares, which I bought on the following dates and for the following per share prices:

| Date | # of shares purchased | # of shares sold | Price per share |
|---|---|---|---|
| 05/04/11 | 25,000 | | 2.02 |
| 05/05/11 | 25,000 | | 2.03 |
| 05/16/[illegible] | 10,000 | | 2.12 |
| 06/14/17 | 10,000 | | 3.85 |
| [illegible] | 10,000 | | 3.89 |
| [illegible] | 10,000 | | 3.54 |
| [illegible] | 10,000 | | 3.39 |
| [illegible] | 10,000 | | 3.25 |
| [illegible] | 6,371 | | 2.[illegible] |
| [illegible] | 4,000 | | 3.23 |
| [illegible] | 5,000 | | 3.44 |
| [illegible] | 4,629 | | 3.39 |
| [illegible] | 20,000 | | 1.99 |
| TOTAL | 155,000 | | |

4. I did not purchase these securities at the direction of counsel, or in order to participate in any private action arising under the federal securities laws.

5. During the three-year period preceding the date of signing this certification, I have not sought to serve, and have not served, as a representative on behalf of a class in any private action arising under the federal securities laws.

6. I will not accept any payment for serving as a representative party on behalf of the Class except to receive a pro rata share of any recovery, or as ordered or approved by the Court, including the award to a representative party of reasonable costs and expenses, including lost wages relating to the representation of the Class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 17th day of November, 2017

By: ____________________

Marco M. Elser